IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION


UNITED STATES OF AMERICA,      )
                               )      September 12, 2023
                               )
        -versus-               )      Charleston, SC
                               )
THERENCE JAMISON,              )      2:21-503-1
                               )
            Defendant.         )



TRANSCRIPT OF SENTENCING

BEFORE THE HONORABLE BRUCE HOWE HENDRICKS
UNITED STATES DISTRICT JUDGE, presiding



A P P E A R A N C E S:

For the Government:    KATHERINE A. ORVILLE, AUSA
                       US Attorney's Office
                       151 Meeting Street, Suite 200
                       Charleston, SC 29401


For the Defendant:     ALICIA V. PENN, ESQ.
                       Federal Public Defender
                       145 King Street, Suite 325
                       Charleston, SC 29401


Court Reporter:        KAREN E. MARTIN, RMR, CRR
                       PO Box 835
                       Charleston, SC 29402


Proceedings reported by stenographic court reporter.
Transcript produced with computer-aided transcription
software.

1           Tuesday, September 12, 2023

2       (WHEREUPON, court was called to order at 1:01 PM.)

3           **THE COURT:**  Thank you.  Take your seats.

4           Madam US Attorney, you may call the case.

5           **MS. ORVILLE:**  Thank you, Your Honor.  May it

6    please the Court?  This is the United States of America

7    vs. Therence Jamison.  It's Case No. 2:21-CR-00503.  We're

8    here today for sentencing.

9           **THE COURT:**  Okay.  Let's go ahead and swear in

10   Mr. Jamison.

11          **THE CLERK:**  Yes, ma'am.

12          Please stand, sir.

13       (WHEREUPON, the defendant was sworn.)

14          **THE DEFENDANT:**  I do.

15          **THE CLERK:**  Thank you, sir.

16          **THE COURT:**  Okay.  Ms. Penn, have you gone over

17   the Presentence Report with your client?

18          **MS. PENN:**  Yes, Your Honor.

19          **THE COURT:**  And you're ready to proceed?

20          **MS. PENN:**  Yes, Your Honor.

21          **THE COURT:**  And Mr. Jamison, did you read your

22   Presentence Report?

23          **THE DEFENDANT:**  Yes, ma'am.

24          **THE COURT:**  You read the whole thing?

25          **THE DEFENDANT:**  Yes, Your Honor.

1      THE COURT:  And you understand it?

2      THE DEFENDANT:  Yes.

3      THE COURT:  And Ms. Penn, I know we've got some

4  objections, so we'll deal with those.

5      But let's go ahead before we do that and go

6  ahead and put the guidelines and statutory provisions on

7  the record, Madam US Probation Officer.

8      THE PROBATION OFFICER:  Yes, Your Honor.  The

9  statutory provisions are as follows.  Ten years to life,

10  supervised release is five years to life, probation is

11  ineligible, fine is $250,000, a special assessment fee of

12  a hundred dollars, JVTA assessment of $5,000.

13      The guideline provisions are a Total Offense

14  Level of 34, Criminal History Category V.  Ineligible for

15  probation.  235 months to 293 months of imprisonment.

16  Five years to life of supervised release.  Pursuant to the

17  policy statement at United States 5D1.2B, the statutory

18  maximum term of supervised release is recommended, a fine

19  of 35,000 to 250,000.  The restitution is to be

20  determined.  Special assessment fee of a hundred dollars,

21  and a $5,000 JVTA assessment.

22      THE COURT:  Okay.  Thank you.

23      All right.  Ms. Penn, I'll be happy to hear from

24  you on your objections.

25      MS. PENN:  Thank you, Your Honor.  We would like

1  to rest on the objections that are incorporated into

2  the -- into probation's supplemental.  I don't have any

3  arguments to make other than the ones that are in there.

4  Argument is that one is overbroad, and that's the one that

5  deals with the visual depiction of minors.  And that the

6  other one is also -- just violates his rights by

7  subjecting him to all kinds of testing that is

8  questionably, we would argue, not based in science.

9            THE COURT:  Okay.  So you're resting on your

10  thorough briefing, which -- and pleading and objections,

11  which I've read and understand.  And I'll go ahead and

12  deal with them now.  And then I'll hear you on your motion

13  for variance I presume.

14            MS. PENN:  Yes.  Thank you, Your Honor.  That

15  would be great.

16            THE COURT:  That will be all you'll present then

17  this afternoon?

18            MS. PENN:  Yes, ma'am.

19            THE COURT:  Okay.  So in regards to your first

20  objection, I'm going to overrule your objection.  And your

21  objection was to Special Condition No. 2, correct?

22            MS. PENN:  Yes, Your Honor.

23            THE COURT:  And so I'll stand on the response by

24  the US Probation Officer that's outlined in the

25  Presentence Report.

1          Does probation recommend that I put that on the

2     record verbally, or is it sufficient to stand on

3     probation's response in the Presentence Report?

4          **THE PROBATION OFFICER:**  Yes, you can, Your

5     Honor.

6          **THE COURT:**  Okay.  Thank you.

7          All right then.  So I'll overrule Objection

8     No. 1 and stand on the response by the US Probation Office

9     to that objection.

10          And then as to your second objection as to

11     Paragraph 81 and Special Condition No. 8 which was

12     previously No. 13, again, the Court will rely in total on

13     the US Probation Officer response to that and overrule

14     that objection.

15          And now I'm happy to hear from you on your

16     variance motion.

17          **MS. PENN:**  Thank you, Your Honor.  We filed a

18     sentencing memorandum in this case that explains kind of

19     in greater detail why we're asking for a variance.

20     What -- Mr. Jamison, since he has been arrested for this

21     case, and that was over two years ago now because he has

22     been in custody for almost exactly two years, from the

23     beginning he has been forthright.  He has been

24     cooperative.  He has taken responsibility for what he did.

25     And now he is under a plea agreement where he understands

1    that the maximum -- that the cap essentially is 250

2    months.  So he knows -- or the cap is 250 and the minimum

3    is 120.  So he has engaged in this process understanding

4    that the very best thing he's going to get is a decade in

5    prison.

6            The conduct is serious.  We're not arguing that

7    it's not.  And in thinking about this case and thinking

8    about, you know, how could I ask for the minimum sentence,

9    my position is that the minimum sentence is enough.  It is

10   a substantial sentence.  It is a serious sentence.

11           And I had the experience of being involved in

12   the Earl Dawson Caldwell sex case, which is the Mount

13   Pleasant businessman who pled guilty.  And as the facts in

14   that case -- I represented a co-defendant.  But as the

15   facts in that case came out, he unquestionably was seeking

16   out young women, minors.  17 was the victim in this

17   particular case.  And not only was he attempting to have

18   sex with them, but he did.  He did over and over again.

19   And for what the sentence he got is his very excellent

20   attorneys negotiated a seven-and-a-half-year sentence for

21   him.  And that sentence is not available to Mr. Jamison

22   because he has already agreed to a minimum of 120.

23           But in addition to that, in addition to kind of

24   this general disparity argument about the kinds of

25   sentences people get for seeking to have sex with minors,

1    Mr. Jamison is a -- has a lot of things in his past that

2    are not excuses but they're things I would ask the Court

3    to consider and take into consideration in his sentencing.

4    The first, which is detailed in his memo, is that he

5    himself was sexually abused as a child.

6         The second is that he has no contact offenses

7    for the past 35 years.  And I think that's huge in trying

8    to figure out if he is a future danger to the community.

9         And the last thing is that we had him evaluated

10   by a licensed professional who specializes in these kinds

11   of case.  And this evaluation was not just like a one-hour

12   meeting, tell me about your life.  It involved testing,

13   interviews, and a real -- and it's not like the doctor

14   didn't know about what he was charged with, a real

15   consideration of the facts of this case and the facts of

16   Mr. Jamison.  And the conclusion from that evaluation is

17   that Mr. Jamison is not a pedophile.  That he knows what

18   he did.  And he is not a future risk to the community and

19   that he hopefully will not do it again.

20        In addition to all those things, Mr. Jamison is

21   57 years old.  And he has been in prison now -- or he has

22   been in jail incarcerated for almost exactly two years.

23   And by the time he gets out, he will be in his mid to late

24   60's, and that if you give him the minimum.

25        And Your Honor, we would ask that that's enough,

1   that plus a lifetime of supervised release where probation

2   will be carefully supervising him.  He'll have to go to

3   counseling where there are any numerous, myriad ways he

4   can trip up especially because his devices will be

5   monitored.  And if he trips up, you can send him right

6   back in.  And you can do this for the rest of his life.

7   We think that is enough punishment for Mr. Jamison and

8   that's what we would ask for.

9            Your Honor, Mr. Jamison would like to speak.

10           **THE COURT:**  Okay.

11           **THE DEFENDANT:**  I just want to say that I'm very

12  apologetic for my actions and I'm very sorry.  And if I

13  had a chance to do it again, I would never do it again.

14  It was just something that was just instinctual.  And I

15  don't even know why I did it to tell you truth.  But I

16  apologize out of my very own heart.  I'm sorry.

17           **THE COURT:**  Thank you.

18           Ms. Penn, I neglected to call on the Government

19  at all.  So I'm going to call on them and then also give

20  you and Mr. Jamison the final word again.

21           **MS. PENN:**  Thank you, Your Honor.

22           **THE COURT:**  Ms. Orville?

23           **MS. ORVILLE:**  Thank you, Your Honor.  May it

24  please the Court?  The Government believes a sentence of

25  250 months is appropriate in this case.  If I could just

1  briefly discuss the 3553(a) factors and Ms. Penn's motion
2  as well.
3          As to the nature and circumstances of the
4  offense and history and characteristics of the defendant,
5  the defendant had explicit sexual conversations with what
6  he believed to be a minor.  He tried to convince him to
7  have sex with an adult.  And he even went so far as to
8  drive to the minor's house and meet up for the sex act.
9  But for the fact that this was an undercover operation, we
10 would be looking at a hands-on offense here.
11         The defendant is no stranger to hands-on
12 offenses.  He has a 1987 conviction for CSC with a minor
13 second for sexual conduct with his nephew.  He also in a
14 polygraph admitted to having sex with a 15 year old when
15 he was already an adult.  He's admitted to viewing and
16 possessing and CP over the years and having other chats
17 with what he believed to be minors.
18         And his criminal history is not limited to sex
19 offenses.  He has a history of cocaine convictions and a
20 violation of the Sex Offender Registry from 2021.
21         As for the need for the sentence imposed to
22 reflect the seriousness of the offense, this is not simply
23 an explicit chat with an undercover or purported minor.
24 This is, but for the fact it was an undercover operation,
25 this would have been a hands-on offense, Your Honor.

1    To promote respect for the law, Mr. Jamison

2    clearly does not respect the law's bounds when it comes to

3    his interactions with what he believes to be minors.

4    To provide just punishment for the offense,

5    harsh punishment is warranted here.  Again, Mr. Jamison

6    went so far as to knock on the front door to the house

7    where he believed the minor lived and where he thought he

8    was going to meet up for sex.

9    To afford adequate deterrence to criminal

10   conduct, a significant sentence is needed to deter

11   Mr. Jamison.  And we can see that consistently in the

12   state system he received sort of slaps on the wrist, a lot

13   of suspended sentences, and then no revocations for

14   violations of other things as he was on those probationary

15   sentences.  We see that he hasn't learned his lesson.  And

16   he has repeatedly continued the same sort of activity.

17   And that he's prioritized his desires and his impulses

18   above anything else.

19   As to whether the sentence would protect the

20   public from further crimes of the defendant, he has a

21   history of hands-on offenses as I've said.  This was an

22   attempted hands-on offense.  And he has failed to register

23   as a sex offender in the past.  And the purpose of Sex

24   Offender Registry is arguably to monitor for the public

25   safety, Your Honor.

1          I'll also note that the defense's sentencing

2    memo argues that he's not prone to recidivism, as Ms. Penn

3    said.  But I would like to point out that this offense of

4    conviction is in fact showing his continued recidivism.

5    He was attracted to and acted on urges with a minor in

6    1987.  He admits that at some point a few years later he

7    did the same thing.  And then in 2020 he was -- he sought

8    out, was attracted to, and acted on his urges with what he

9    believed to be a 14-year-old boy.

10          This shows a pattern over a lifetime, Your

11   Honor.  It shows that the 1987 conviction wasn't some

12   youthful mistake, some misunderstanding.  It shows that

13   this is the pattern of Mr. Jamison's conduct.  And that he

14   has been and will continue to be a risk to minors.

15          I would say as to the Caldwell case that

16   Ms. Penn brought up, as the Court knows, each case raises

17   its own facts.  And the issues that existed that led to

18   that sentence, Your Honor, I believe are not at all

19   present in this case.  So I would just ask the Court to

20   rely on the facts of this case and the appropriate

21   sentence here.

22          The guidelines call for a sentence as you know

23   between 235 and 290 months.  The Government is asking the

24   Court to sentence the defendant to 250 months, which is

25   right in the middle of that range and we believe will

1    appropriately address the 3553(a) factors as well as the

2    defense's mitigation arguments.

3            **THE COURT:**  Okay.

4            Ms. Penn?

5            **MS. PENN:**  Thank you, Your Honor.  Just briefly.

6    Mr. Jamison has had to register for a very long time.  And

7    I think the only time he missed registering was when he

8    had already been arrested for this count in state court.

9    And he told me that he thought that because he had been

10   arrested that he didn't have to register.  Obviously, he

11   was incorrect.  But I have no question that between all

12   the rigorous requirements of probation for sex offenders,

13   that that will not be an issue in the future because

14   probation will know pretty much where he is and they know

15   where he lives.  They will have track of any devices, if

16   they choose to give him access to those at all.

17           I think there is a difference in this case in

18   that Mr. Jamison in his discussions with law enforcement

19   admitted to trying to get in contact, but also said that

20   he had not really been successful.  And I think there is a

21   difference between seeking out -- his messages are in the

22   Presentence Report.  And they are certainly disturbing in

23   that what he is trying to do is have a relationship or

24   have an encounter with a 14 year old.

25           But this was very -- Your Honor, this was very

1   nearly a trial for us because in my mind asking is not the

2   same thing as enticement.  And I've been around this with

3   my office.  They did not agree with me.  But I say that

4   because these messages are not threatening messages.  They

5   are essentially, like, asking for information and

6   proposing a hookup is what they are.

7           Fortunately for us all, he was not successful

8   and this was not a real minor.  But I think it's also

9   important that in the evaluation the doctor does, he

10  addresses this with Mr. Jamison and he doesn't think he's

11  a pedophile.  He doesn't even diagnose know him with

12  paraphilia, which would be an attraction to post-pubescent

13  minors.  And Mr. Jamison I think clearly understands that

14  what he did was wrong.  He sees the terrible consequences

15  it has led him to.  And he tells us all that he won't do

16  this again.

17          With that in mind, even after admitting all of

18  this and understanding his grave, grave mistake, he will

19  still be in prison for at least ten years.  And Your

20  Honor, we ask that the Court find that is enough.

21          Part of the reason I came to that number or that

22  amount is in his guidelines calculations.  In his

23  guidelines, this conduct, this conviction from the 1980's

24  is counted against him twice.  It increases his Criminal

25  History Category from a III to a V.  Not only that, but it

1    increases his offense level by seven levels.  And if -- I

2    did check, he doesn't get points for it, so at least it's

3    not on top of everything else.  But if you take away one

4    of those so that that offense is only counted once, it

5    ends up kind of in this a hundred and whatever month range

6    as opposed to like a two hundred and something month

7    range.  So that's why we're asking for that.

8             Thank you, Your Honor.

9        **THE COURT:**  Okay.  Does he have anything else he

10   wants to say?

11           **THE DEFENDANT:**  No.

12           **THE COURT:**  Okay.  The Court's going to take a

13   ten-minute recess and confer with probation about one or

14   two things back in the jury room.

15            I'm assuming the jury room is open back there?

16           **THE CLERK:**  Yes, ma'am, it is.

17           **THE COURT:**  Okay.  Thanks.

18      (WHEREUPON, a short break was taken.)

19           **THE COURT:**  Thank you.  Take your seats, please.

20            Ms. Penn, I understand that you have somebody

21   who wants to say something?

22          **MS. PENN:**  Yes, Your Honor, before you pronounce

23   sentencing, Mr. Jamison's oldest brother is here and would

24   like to say a few words on his behalf.

25           **THE COURT:**  Yeah, happy to hear from him.

1          Hi, how are you.  Right there before those

2     microphones.

3          **THE DEFENDANT'S BROTHER:**  My name is Ronald

4     Jamison.  I'm the oldest of the siblings.  I'm 74 years

5     old.  I'm retired Navy, naval officer, First Class Naval

6     Petit Officer United States Navy.

7          **THE COURT:**  Thank you for your service.

8          **THE DEFENDANT'S BROTHER:**  I was aboard the USS

9     Charleston, Senator McClain and Hartwell from the time I

10    go in the -- from high school to the time I go in the

11    military.

12         You know, Judge, I would like for you to have

13    some kind of mercy upon my brother.  I love him to death.

14    I've known him, support him, you know, behind him, you

15    know, even though I know he did some bad things.  But I

16    just hope you give him some kind of lenience.  I know what

17    he did was wrong.  I know that.  He should know it.

18         But, you know, I'm the only one to back him.  My

19    health is not too good.  Just got out of the VA Hospital a

20    few days ago and suffered from a stroke and everything.

21    I've been around obvious pressure, you know, from the time

22    all this was happening.  I left my hometown, used to come

23    in to be with him because he don't have any support except

24    for me, not all the siblings.  And I'd just like, you

25    know, a little lenient.

1          THE COURT:  Well, you're a good brother to him.

2    And the Court appreciates that.  That means a lot to the

3    Court.  I'm definitely going to consider what a great

4    brother he has, older brother.  And you've done a great

5    service to the United States.  The Court appreciates that.

6          THE DEFENDANT'S BROTHER:  Thank you.

7          THE COURT:  Appreciates your having been in the

8    VA and your coming straight down to the courthouse.

9          THE DEFENDANT'S BROTHER:  I was in Vietnam for

10   four years.  I'm sorry all this happened.  And, you know,

11   I ask for some leniency, you know.  I'll try to do the

12   best I can, you know, to help him out along, you know.

13         THE COURT:  Okay.

14         THE DEFENDANT'S BROTHER:  I'll be behind him the

15   whole time.

16         THE COURT:  You take care of yourself, too, sir.

17   Okay?  Thank you for being here.  The Court appreciates

18   it.  Take care of yourself.

19         THE DEFENDANT'S BROTHER:  Thank you, Judge.

20         THE COURT:  Anything else, Ms. Penn?

21         MS. PENN:  No, Your Honor.

22         THE COURT:  Anything else from the Government?

23         MS. ORVILLE:  Your Honor, just put it on the

24   record, there's no restitution in this case.  I was just

25   speaking with probation to confirm that.

1    **THE COURT:**  Okay.  So thank you very much to

2    everybody.

3         Thank you for the thorough briefing, Ms. Penn.

4    And the Court is going to grant your request for variance

5    in part.

6         The Court has considered the nature and

7    circumstances of the offense and the history and

8    characteristics of Mr. Jamison.  And while the Court has

9    considered the conclusions of the psychiatric evaluation

10   and the defendant's criminal history, his criminal history

11   and pattern of conduct as articulated by the Government in

12   its 3553(a) allocution and during his -- Mr. Jamison's

13   post-Miranda interview also thoroughly outlined by the

14   Government wherein he included admitting to sexual

15   relations with a 15-year-old female when he was 26 years

16   old and child porn images on his cell phone, that raises

17   concerns to the Court, all that raises concerns.

18        However, the Court is not going to consider his

19   conviction for failure to register as a sex offender

20   adversely against him and is also going to consider his

21   age and the sexual abuse that he suffered as a child by

22   members of his family.  Likewise, the Court has considered

23   and been duly impressed by the moving testimony of his

24   older brother.

25        In sum, the Court has considered the arguments

1   raised in the defendant's sentencing memorandum and the

2   request for variance. And therefore, as I mentioned, I

3   believe there are circumstances present that warrant a

4   slight variance.

5           So having calculated and considered the advisory

6   sentencing guidelines and having also considered the

7   relevant statutory sentencing factors under 3553(a), it's

8   the judgment of the Court that the defendant, Therence

9   Jamison, is hereby committed to the custody of the Bureau

10   of Prisons to be imprisoned for a term of 223 months. And

11   this sentence is imposed to protect the public from his

12   criminal behavior and provide both specific and general

13   deterrence.

14           The length of the sentence will also allow

15   defendant to receive any and all treatment as necessary to

16   improve his conduct and condition. So the Court

17   recommends that defendant participate in the sex offender

18   treatment program while incarcerated.

19           It appears he doesn't have the ability to pay a

20   fine, so the fine is waived. He shall pay the mandatory

21   $100 special assessment fee and the $5,000 JVTA and

22   restitution in the amount to be due immediately.

23           I'm going to go back, Ms. Penn and Ms. Orville,

24   and go back and remove Special Condition No. 8 from

25   Paragraph 81 but keep Special Condition No. 2.

1        Special Condition No. 2 serves the statutory

2    purpose of deterrence, public protection, and

3    rehabilitation, and will enable the US Probation Office to

4    promote public safety through effective oversight of the

5    defendant.  It targets his offense conduct and his history

6    of engaging in sex with minors and possessing and viewing

7    child pornography.  To the extent there becomes any doubt

8    as to a particular location defendant wishes to visit, he

9    has the ability and is encouraged to always consult with

10   his probation officer.

11        So upon release from prison, he shall be placed

12   on supervised release for a term of life.  And while on

13   supervised release, he shall comply with the mandatory

14   conditions of supervision as outlined in 18 USC 3583(d)

15   and Sentencing Guideline Section 5D1.3(a) and the standard

16   discretionary conditions outlined in 5D1.3(c) as noted in

17   Paragraphs 67 and 69 of the Presentence Report.

18        Standard conditions of supervision 1 through 9

19   and 13 serve the statutory sentencing purposes of public

20   protection and rehabilitation pursuant to 3553(a)(2)(C)

21   and (D).  Standard conditions 10 and 12 serve the

22   statutory purpose of public protection pursuant to

23   3553(a)(2)(C).  Standard condition 11 ensures that the

24   defendant does not engage in activities that may

25   potentially conflict with the other conditions of

1  supervision and that may pose risks to the defendant's

2  probation officer.

3          The defendant shall also follow -- defendant

4  shall also comply with the following special conditions.

5  The Court adopts and incorporates into the judgment all 12

6  special conditions except Nos. 2 and -- no, except No. 8.

7          And Ms. Penn, in regards to the special

8  conditions, did you go over the special conditions with

9  your client?

10         **MS. PENN:**  Yes, Your Honor, I did.

11         **THE COURT:**  And did he understand them?

12         **MS. PENN:**  I think so, Your Honor.

13         **THE COURT:**  And do you need me to go over them

14  with him any further?

15         **MS. PENN:**  No, Your Honor.

16         **THE COURT:**  And Mr. Jamison, do you have any

17  questions about the special conditions?

18         **THE DEFENDANT:**  No, ma'am, I don't.

19         **THE COURT:**  You read them and went over them

20  with your lawyer?

21         **THE DEFENDANT:**  Yes, ma'am.

22         **THE COURT:**  All right.  I'm trying to keep my

23  math straight here, Ms. Penn.  You did not object to

24  Conditions 1 or 3 through 7 or 9 through 12, correct?

25         **MS. PENN:**  That's correct, Your Honor.

1      THE COURT:  Okay.  So I think that's good.

2      Anything further from probation?

3      THE PROBATION OFFICER:  No, Your Honor.

4      THE COURT:  Okay.  Anything from the Government?

5      MS. ORVILLE:  The Government needs to move to

6   dismiss the remaining counts of the indictment.  But

7   nothing as to the form of the sentence, Your Honor.

8      THE COURT:  Okay.  Thank you.  Granted.

9      And so you have 14 days from the entry of

10  judgment to file a notice of appeal, Mr. Jamison.  If you

11  want to appeal and you can't afford a lawyer, the Court

12  will appoint one for you.  Okay?

13      Time out.

14   (WHEREUPON, the Court spoke with probation

15      privately.)

16      THE COURT:  Just one second.  We're going to

17  take a two-minute recess.

18   (WHEREUPON, a short break was taken.)

19      THE COURT:  Okay.  So back on the record.  The

20  Court adopts the factual findings supporting each special

21  condition as outlined in the Presentence Report.  And with

22  respect to Special Condition No. 2, the Court adopts the

23  reasoning set forth by the probation office in the revised

24  addendum to the Presentence Report as additional factual

25  support for Special Condition No. 2.

1          So you have 14 days from the entry of judgment

2     to file a notice of appeal.  And if you want to appeal and

3     you can't afford a lawyer, then I will appoint one for

4     you, Mr. Jamison.

5          Anything further from the Government?

6          **MS. ORVILLE:**  No, Your Honor.

7          **THE COURT:**  Ms. Penn?

8          **MS. PENN:**  No, Your Honor.

9          **THE COURT:**  Okay.  Thank you all and good luck.

10       (WHEREUPON, court was adjourned at 2:13 PM.)

11                              ***

12    I certify that the foregoing is a correct transcript from

13    the record of proceedings in the above-entitled matter.

14      s/Karen E. Martin                    11/1/2023

       _____    _____

15    Karen E. Martin, RMR, CRR           Date

16

17

18

19

20

21

22

23

24

25