IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

- - -

THE UNITED STATES OF AMERICA,  : 2: 21-cr-503
                                       :
                                       : May 26, 2022
                                       :
      versus                         : (Pages 1 - 26)
                                       :
                                       :
THERENCE JAMISON,           :
                Defendant.  :
                                       :

- - -

TRANSCRIPT OF PLEA
BEFORE THE HONORABLE BRUCE HOWE HENDRICKS
UNITED STATES DISTRICT COURT JUDGE

- - -

**A P P E A R A N C E S:**

For the Government:          KATHERINE ANNE ORVILLE
                                  US Attorneys Office (Chas)
                                  151 Meeting Street, Suite 200
                                  Charleston, SC 29401-2238

For the Defendant:           ALICIA VACHIRA PENN
                                  Federal Public Defender
                                  145 King Street, Suite 325
                                  Charleston, SC 29401

Court Reporter:              LISA D. SMITH, RPR, CRR
                                  Official Court Reporter
                                  P.O. Box 835
                                  Charleston, SC 29401

Proceedings recorded by mechanical stenography,
transcript produced by computer.

1    *(The following proceedings commenced at 2:30 p.m.)*

2    THE COURT: Madam U.S. Attorney.

3    MS. ORVILLE: Yes, your Honor. Thank you.

4    This is the United States of America vs. Therence

5    Jamison. Criminal number 2: 21-cr-503. He is here today to

6    plead guilty to Count 1 of the indictment, pursuant to a plea

7    agreement filed just now with the Court.

8    THE COURT: Okay. Thank you.

9    Let's go ahead and swear in Mr. Jamison.

10   DEPUTY CLERK: Mr. Jamison, stand please.

11   *(Defendant sworn.)*

12   THE COURT: Okay. And, Ms. Penn, y'all are welcome

13   to pull your masks down when you're talking, or you're welcome

14   not to. It's up to you.

15   MS. PENN: Thank you, your Honor.

16   THE COURT: So, Ms. Penn, have you been able to

17   communicate just fine with your client?

18   MS. PENN: Yes, your Honor.

19   THE COURT: Have you explained to him the charge or

20   charges contained in the indictment, and the possible

21   punishment, and his right to a jury trial?

22   MS. PENN: I have.

23   THE COURT: And in your opinion, does he understand

24   the charges, the punishment and his constitutional rights?

25   MS. PENN: In my opinion, he does.

1    THE COURT:  And how does he indicate to you he wishes

2  to plead, guilty or not guilty?

3    MS. PENN:  Guilty, your Honor.

4    THE COURT:  Do you agree with that decision?

5    MS. PENN:  I do.

6    THE COURT:  And in your own investigation of the

7  facts and circumstances of his case, do you believe that the

8  government could produce sufficient evidence to convince a

9  jury of his guilt beyond a reasonable doubt, and that if he

10  were to stand trial, his conviction would be probable?

11    MS. PENN:  I believe so, your Honor.

12    THE COURT:  All right.  Has he been ordered to submit

13  to a mental examination to determine his competency to stand

14  trial?

15    MS. PENN:  He has not.

16    THE COURT:  And do you have any doubt as to his

17  competence to plead at this time?

18    MS. PENN:  I do not.

19    THE COURT:  So, Mr. Jamison, you are now under oath,

20  and if you answer any of my questions falsely, your answers

21  could later be used against you in another prosecution for

22  perjury or making a false statement.  Do you understand?

23    THE DEFENDANT:  Yes, your Honor.

24    THE COURT:  Now, I've been informed that you wish to

25  change the plea that you previously entered before the U.S.

1  Magistrate Judge of not guilty to a plea of guilty.  Is that

2  true?

3  THE DEFENDANT:  Yes.

4  THE COURT:  Before I can accept your plea of guilty,

5  I'm going to have to make sure that that plea is made freely

6  and voluntarily.  So, I'm going to ask you some questions.  If

7  you don't understand my questions, just let me know, and I'll

8  try to explain them to you.  Also, you can just raise your

9  hand if you want to stop and talk to your lawyer about

10  something privately or confidentially at any time, then we'll

11  let you do that.  Do you understand?

12  THE DEFENDANT:  Yes, ma'am.

13  THE COURT:  How old are you?

14  THE DEFENDANT:  Fifty-seven.

15  THE COURT:  And where were you born?

16  THE DEFENDANT:  Charleston, South Carolina.

17  THE COURT:  How far did you go in school?

18  THE DEFENDANT:  I have an associate's degree.

19  THE COURT:  What kind of jobs have you had most

20  recently?

21  THE DEFENDANT:  I worked for the Mercedes Benz plant.

22  My most recent job was at a pizza place.

23  THE COURT:  Have you been treated for alcohol abuse

24  or drug abuse or mental illness?

25  THE DEFENDANT:  Mental illness, yes.

1      THE COURT:  And when was that?

2      THE DEFENDANT:  That was back in 1988.

3      THE COURT:  Did you successfully complete a program?

4      THE DEFENDANT:  Yes, ma'am.

5      THE COURT:  Are you taking any kind of medication at

6  all?

7      THE DEFENDANT:  For high blood pressure.

8      THE COURT:  So, are you aware of any physical,

9  emotional, or nervous problem or drug that might keep you from

10  understanding what you're doing?

11      THE DEFENDANT:  No, ma'am.

12      THE COURT:  Do you understand that you're pleading

13  guilty?

14      THE DEFENDANT:  Yes, your Honor.

15      THE COURT:  Ms. Penn, do you agree that your client

16  knows and understands what he's doing today?

17      MS. PENN:  I do, your Honor.

18      THE COURT:  It appears to me that Mr. Jamison is

19  competent to plead to the charges, and I so find now for

20  purposes of the record.

21      So, Mr. Jamison are you satisfied with the way that

22  Ms. Penn has advised you and represented you?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  Have you been able to talk to her as

25  often and as long as you felt it was necessary for her to

1  represent you?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Do you need any more time to talk to your

4  lawyer?

5          THE DEFENDANT:  No.

6          THE COURT:  Have you understood all your

7  conversations you've had with your lawyer?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Has she done everything for you that you

10  felt that she should have or could have done?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Has she failed to do anything that you've

13  asked her to do?

14          THE DEFENDANT:  No, ma'am.

15          THE COURT:  Is there anything you wanted her to do

16  prior to today that she has not done?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Are you completely satisfied then with

19  her services?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Do you have any complaint at all that you

22  want to make to the Court about your lawyer?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  So, under the Constitution and laws of

25  the United States, you've got a right to plead not guilty.

1    And if you plead not guilty, you're entitled to a trial by

2    jury, during which you'd have the right to the assistance of

3    your counsel for your defense on the charges contained in the

4    indictment.  Do you understand?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  And if you were to go to trial, you'd be

7    presumed to be innocent, and the government would be required

8    to prove you guilty by competent evidence and beyond a

9    reasonable doubt before you could be found guilty, and you

10   wouldn't have to prove that you were innocent.  Do you

11   understand?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  In the course of a trial, the witnesses

14   for the government would have to come into court and testify

15   in your presence, and your lawyer could cross-examine those

16   witnesses, object to evidence offered by the prosecution, and

17   offer evidence on your behalf.  Do you understand?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  And at a trial, while you'd have the

20   right to testify if you chose to do so, you'd also have the

21   right not to testify, and no inference or suggestion of guilt

22   could be drawn from the fact that you didn't testify.  Do you

23   understand?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  At a trial, you'd have the right to the

1   issuance of subpoenas or compulsory process to compel the

2   attendance of witnesses to testify for you in your defense.

3   Do you understand?

4           THE DEFENDANT:  Yes.

5           THE COURT:  And if you plead guilty, and I accept

6   your plea, you'll waive your right to that jury trial and the

7   other rights that I've just discussed, there won't be a trial,

8   and I'll enter a judgment of guilty and sentence you on the

9   basis of your guilty plea after considering a presentence

10  report.  Do you understand?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  And if you plead guilty, and I accept

13  your plea, you will also have to give up your right not to

14  incriminate yourself, since I'll ask you questions about what

15  you did in order to satisfy myself that you're guilty as

16  charged, and you'll have to acknowledge your guilt.  Do you

17  understand?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Now, you may have given an incriminating

20  statement in this case.  If you plead guilty, you waive or

21  give up the right to contest or challenge whether any such

22  statement was freely and voluntarily in accordance with your

23  constitutional rights.  Do you understand?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  You may have defenses or a defense to the

1  charge or charges against you.  Do you understand that if you

2  plead guilty, you waive or give up any defenses to the charge?

3  　　　　　THE DEFENDANT:  Yes, your Honor.

4  　　　　　THE COURT:  If you plead guilty, and I accept your

5  plea, you may be required to make restitution to any victim or

6  victims of your acts, either by payment of money or in

7  personal service, as may be directed by the Court.  If

8  restitution or personal service is ordered, failure to comply

9  may be a basis for revoking any period of supervision.  Do you

10  understand?

11  　　　　　THE DEFENDANT:  Yes, ma'am.

12  　　　　　THE COURT:  Are you on probation or parole for

13  anything else?

14  　　　　　THE DEFENDANT:  No, your Honor.

15  　　　　　THE COURT:  Do you understand that when you plead

16  guilty, you admit the truth of the charge that's been made

17  against you?

18  　　　　　THE DEFENDANT:  Yes, ma'am.

19  　　　　　THE COURT:  Now that I've discussed your rights with

20  you, do you still want to plead guilty?

21  　　　　　THE DEFENDANT:  Yes, your Honor.

22  　　　　　THE COURT:  So, the offense or offenses to which

23  you're pleading guilty are felony offenses.  If your plea is

24  accepted, you'll be adjudged guilty of that offense, and such

25  adjudication may deprive you of valuable civil rights, such as

1   the right to vote, the right to hold public office, the right

2   to serve on a jury, and the right to ever possess any kind of

3   firearm or even a single piece of ammunition.  Do you

4   understand?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  If it's applicable, you may be required

7   to forfeit certain property to the government.  Do you

8   understand?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  So, do you understand that a conviction

11   for this offense will likely result in substantial future

12   restrictions on where you may live or work and with whom you

13   may associate?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  So, if you plead guilty, then I'll have

16   to determine the appropriate sentence to be imposed.  And

17   under the Sentencing Reform Act of 1984, the sentencing

18   commission has issued guidelines for judges to follow.  I've

19   got to consider the statutory factors under 3553(a) as well as

20   the advisory guidelines.

21          Have you and your lawyer talked about how those

22   statutory factors and the guidelines may affect your sentence?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  So, she can only give you an estimate of

25   what your guideline range might be.  Do you understand that

1  the sentence I impose may be different from any estimate that

2  she's given you?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  I'm not even going to be able to

5  determine the guideline sentence for your case until after the

6  presentence report has been done and you and the government

7  have had a chance to challenge the facts reported to me by

8  probation.  Do you understand?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Is relevant conduct an issue here?

11         MS. ORVILLE:  I don't believe so, your Honor.  It's a

12  single-defendant case.

13         THE COURT:  Yeah.  Ms. Penn, do you see any relevant

14  conduct issues here?

15         MS. PENN:  I don't believe so, your Honor.

16         THE COURT:  So, under some circumstances, you or the

17  government may have the right to appeal any sentence that I

18  might impose.  Do you understand?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  And after it's been determined what

21  guidelines do apply to your case, I've got the authority in

22  some circumstances to impose a sentence that's either more

23  severe or less severe than that called for by the guidelines.

24  Do you understand?

25         THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  So, parole's been abolished, and if
2     you're sent to prison, you won't be released on parole.  Do
3     you understand?
4          THE DEFENDANT:  Yes, ma'am.
5          THE COURT:  So, the Court may order a term of
6     supervised release to follow imprisonment in any case, but the
7     Court must order a term of supervised release if a sentence of
8     more than one year is imposed, or if it's required by the
9     statute.  Do you understand?
10          THE DEFENDANT:  Yes.
11          THE COURT:  So, when you're placed on supervised
12     release, you're restricted as to the places you might go and
13     the things you might do, and you must report to the
14     authorities on a regular basis.  Do you understand?
15          THE DEFENDANT:  Yes, ma'am.
16          THE COURT:  And if you were to violate any term or
17     condition of that supervised release, you could be given more
18     time in prison.  Do you understand?
19          THE DEFENDANT:  Yes, ma'am.
20          THE COURT:  So, you've heard Ms. Penn tell me that
21     she's explained to you the charges against you, the possible
22     punishment, and your constitutional rights.  And she says you
23     understand all these things.  Is that true?
24          THE DEFENDANT:  Yes, your Honor.
25          THE COURT:  Do you understand what's going on here

1    today?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Have you received a copy of the

4    indictment, which is the written charges made against you?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Have you discussed with your lawyer the

7    charges in the indictment and the case in general?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Have you told her everything about your

10   case?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  All right.  I'd ask Madam U.S. Attorney

13   to please summarize the indictment and give us the elements

14   and the penalties.

15             MS. ORVILLE:  Yes, your Honor.

16             He's pleading guilty to Count 1 of the indictment,

17   which charges that Mr. Jamison, on or about November, the 6th,

18   of 2020, used a facility and means of interstate or foreign

19   commerce to knowingly attempt to persuade, induce, entice and

20   coerce an individual who had not yet obtained the age of 18

21   years -- to wit, a 14-year-old -- to engage in sexual

22   activity, which would constitute a criminal offense under the

23   South Carolina Code of Laws, to wit, second-degree criminal

24   sexual contact with a minor and attempted second-degree

25   criminal sexual conduct with a minor.

1       Count 2, which he is not pleading, was a possession

2   of child pornography involving a prepubescent minor under

3   2252A(a)(5)(B) *(phonetic)*.  The elements for Count 1 to which

4   he is pleading are, first, that the defendant induced, enticed

5   or coerced or attempted to do so; second, another person who

6   had not obtained the age of 18 years; third, to engage in

7   prostitution or any sexual activity for which any person could

8   be charged with a criminal offense; fourth, that in doing so,

9   the defendant used the mail or any facility or means of

10  interstate or foreign commerce; and fifth, that the defendant

11  did so knowingly.

12      The penalties for this offense are a mandatory

13  minimum of 10 years and a maximum of life imprisonment, a

14  maximum fine amount of $250,000, supervised release for a

15  mandatory minimum of five years and a maximum of a lifetime,

16  and a mandatory special assessment of $100.

17          THE COURT:  Okay.  Mr. Jamison, having heard the U.S.

18  attorney, do you understand the nature of the charges against

19  you and the range of possible punishments?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand there's a mandatory

22  minimum sentence of 10 years?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  And do you still want to plead guilty?

25          THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  Did you commit this offense?

2    THE DEFENDANT:  Yes, ma'am.

3    THE COURT:  So, I find that Mr. Jamison fully

4    comprehends and understands the general nature of the charges

5    against him and generally what elements the government would

6    have to prove if a trial were held.

7    So, there has been a plea agreement.  And I'd ask

8    Madam U.S. Attorney to summarize that plea agreement.

9    MS. ORVILLE:  Yes, your Honor.

10    The first paragraph lays out that the defendant

11    agrees to plead guilty to Count 1 of the indictment for

12    attempted coercion or enticement of a minor.  It lays out the

13    elements that the government would be required to prove at

14    trial and the maximum penalties.

15    The next paragraph says the defendant understands the

16    monetary penalties imposed by the Court are due immediately

17    and are subject to enforcement by the United States as civil

18    judgments.  This includes restitution as well as a $100

19    special assessment, pursuant to 18 U.S.C. Section 3013.

20    The next paragraph says that the defendant

21    understands the government's obligations pursuant to the plea

22    agreement are contingent upon the defendant's abiding by state

23    and federal laws and abiding by any bond executed.  In the

24    event the defendant fails to comply, the government will have

25    the right to void its obligations under this agreement, and

1  the defendant would still not have any right to withdraw his

2  plea.

3           The next paragraph says the defendant agrees to

4  surrender property subject to forfeiture and to the Court's

5  prompt entry of a preliminary order of forfeiture.  The

6  defendant agrees the United States shall be entitled to

7  forfeiture of any property to include a Samsung Galaxy J7 Star

8  R58M207WEHJ and any substitute assets of the defendant up to

9  the value of the money judgment.  The defendant agrees to take

10  all steps necessary to identify and locate all substitute

11  assets and transfer custody to the United States before

12  sentencing and to help the government obtain any clear title

13  before sentencing.

14           The next paragraph says the defendant and the

15  government stipulate and agree that the appropriate maximum

16  sentence in this case is 250 months.  The defendant

17  understands this stipulation is not binding upon the Court,

18  the United States's Probation Office, and that the defendant

19  has no right to withdraw his plea should this stipulation not

20  be.  Further, the defendant understands and acknowledges that

21  this stipulation is binding on the government only in the

22  event the defendant complies with all terms of the agreement

23  and does not contest any of the above stipulations or readily

24  provable relevant conduct.

25           The next paragraph says the defendant has met with

1   and has had sufficient time to consult with his attorney about

2   the indictment, his defenses, and his rights.

3           The next paragraph says the defendant waives the

4   right to contest the conviction or sentence in any direct

5   appeal or other post-conviction action; however, this waiver

6   does not apply to claims of ineffective assistance of counsel,

7   prosecutorial misconduct or future changes in the law that

8   affect the defendant's sentence.

9           The next paragraph says the defendant waives all

10  rights to request or receive records pertaining to the

11  investigation or prosecution of the case.  And the final

12  paragraph says that this is the entire agreement of the

13  parties.

14          THE COURT:  What paragraph was that waiver in again?

15          MS. ORVILLE:  The waiver, I believe, is in -- my

16  numbering is off, your Honor, on this page.  But I believe

17  that it is paragraph nine.

18          THE COURT:  Nine?

19          MS. ORVILLE:  Yes, I think that's correct.

20          Yes, your Honor, it's paragraph nine.

21          THE COURT:  Okay.  So, this isn't technically an

22  11(c)(1)(C).  You're just saying that the maximum is 250

23  months.

24          MS. ORVILLE:  Yes, your Honor.  We're stipulating and

25  agreeing that that cap is appropriate.

1      THE COURT:  Okay.  All right.  So, Madam Federal

2  Pubic Defender Penn, has the assistant U.S. attorney correctly

3  summarized the plea agreement then?

4      MS. PENN:  She has, your Honor.

5      THE COURT:  And you agree with the stipulation in

6  paragraph seven, that the appropriate maximum sentence is

7  250 months?

8      MS. PENN:  Yes, your Honor.

9      THE COURT:  And that that stipulation is not binding

10  on the Court or the U.S. Probation Office, and he can't

11  withdraw his plea if we don't agree with that?

12      MS. PENN:  That's correct, your Honor.

13      THE COURT:  Okay.  So, Mr. Jamison, do y'all have a

14  copy of the plea agreement there?

15      THE DEFENDANT:  Yes, your Honor.

16      THE COURT:  And is that the document you've entered

17  into in this case?  Is that a copy of it?

18      THE DEFENDANT:  Yes, ma'am.

19      THE COURT:  And is that the one you signed?

20      THE DEFENDANT:  Yes, ma'am.

21      THE COURT:  A copy of it?

22      THE DEFENDANT:  Yes, ma'am.

23      THE COURT:  Have you read it?

24      THE DEFENDANT:  Yes, ma'am.

25      THE COURT:  Do you understand all of it?

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Did you discuss the plea agreement with

3   your lawyer before you signed it?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Does it set out your entire agreement

6   with the U.S. government concerning the charges pending

7   against you?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Do you understand that any stipulations

10  in your plea agreement are not binding on me?

11       THE DEFENDANT:  Yes, ma'am.

12       THE COURT:  And I may or may not follow the

13  stipulations and I can sentence you up to the maximum without

14  permitting you to withdraw your plea, and impose a sentence

15  that's more severe than that called for by the plea agreement;

16  do you understand?

17       THE DEFENDANT:  Yes, ma'am.

18       THE COURT:  Do you understand that parole has been

19  abolished, and that if you're sentenced in accordance with

20  your plea agreement, that you won't be released on parole?

21       THE DEFENDANT:  Yes, your Honor.

22       THE COURT:  And I see in paragraph nine that -- it

23  says that you are aware that, under Section 3742 of Title 18

24  and Section 2255 of Title 28, every defendant has certain

25  rights to contest a conviction and/or instance.  Acknowledging

those rights in exchange for the concessions made by the
government, you have waived the right to contest either the
conviction or the sentence in any direct appeal or other
post-conviction action, including any proceedings under 2255,
but the waiver wouldn't apply to claims of ineffective
assistance of counsel, or prosecutorial misconduct that might
be raised pursuant to Section 2255, or future changes in the
law that the might affect your sentence.

Do you understand that you're waiving those rights?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you still want to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  Other than the plea agreement, has anyone
promised you anything or held out any hope of a reward to get
you to plead guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  Has anyone threatened you, or pressured
you, or used force to get you to plead guilty?

THE DEFENDANT:  No, ma'am.

THE COURT:  Have you had enough time to decide
whether you want to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  And are you pleading guilty of your own
free will and accord?

THE DEFENDANT:  Yes, ma'am.

1    THE COURT:  All right.  Madam U.S. Attorney, I'd ask
2    you to summarize the evidence for us.

3    MS. ORVILLE:  Thank you, your Honor.

4    This case originated from Homeland Security, Mt.
5    Pleasant Police Department, and Internet Crimes Against
6    Children Task Force Operation, called "Operation Playground"
7    in which agents posed online as minors.

8    Mr. Jamison and an undercover agent, posing as a
9    14-year-old named Zach, began to chat on the phone
10   application, Grindr.  On November 5th and 6th of 2020, their
11   conversations moved to text messages, which I'll read to
12   your Honor, which described the finalizing of plans for
13   Jamison to meet who he believed to be 14-year-old Zach.  The
14   texts will lead up to the time Jamison actually arrived at
15   1139 Bonnie Lane in Mt. Pleasant, where he was greeted by law
16   enforcement instead of 14-year-old Zach.

17   On November 5th of 2020, Jamison says:  "Hey, Zach,
18   this is Therence.  I was just calling to see what was up.
19   Text me back please."

20   Zach:  "Hey.  OMG.  I thought I had lost your info.
21   My Grindr account got banned.  I didn't recognize your
22   number."

23   Therence:  "How have you been?  I was worried about
24   you."

25   Zach:  "I'm good.  I couldn't get back on Grindr to

find your number."

Therence:  "Okay.  Is your mom still out of town?"

Zach:  "Yeah.  She left yesterday.  How old are you again?"

Therence:  Forty-one.  That's not too old, is it?

Zach:  "Not for me.  Hah hah.  Just realized our ages are like backwards, 41, and 14."

Therence:  "Yes, that's hilarious.  So, what's up Zach?  Do you still want to chill?"

Zach:  "I guess so.  What about you?"

Therence:  "Yes.  When?"

Zach:  "Kind of any time.  What are we gonna do?"

Therence:  "Can I come over tonight?"

Zach:  "I guess.  TBH" -- which means "to be honest" -- "I don't remember what we were talking about before."

Therence:  "What is your address?"

Zach:  "It's in Mt. Pleasant.  What are we going to do?  I'm kind of nervous tbh."

Therence:  "You don't have to be nervous.  We'll do what you want.  Where in Mt. Pleasant?"

The Chat continues on November 6th of 2020:

Therence:  "Hey, Zach.  Are you afraid of meeting me?  I promise I won't hurt you.  I just want the chance to get to know you."

Zach:  "Not afraid.  Just nervous, you know?"

1    Therence:  "Well, I can understand that.  May I
2    please have a chance to see you?"
3    Zach:  "What are we going to do when we meet up?"
4    Therence:  "Whatever you want."
5    Zach:  "That sounds cool."
6    Therence:  "What do you want to do?"
7    Zach:  "I don't know.  IDK.  Whatever.  New to being
8    bi, remember?  What should a newbie lol like me do?"
9    Therence:  "We could start with oral sex and then we
10   could experiment after."
11   Zach:  "That sounds like a good place to start."
12   Therence:  "I would love to kiss you too."
13   Zach:  "I would like to try that.  I haven't really
14   made out with a guy."
15   Therence:  "Cool.  We can try it out, okay?  Let me
16   know when."
17   Zach:  "Okay.  Pretty soon.  Just finishing up one of
18   the school projects that has to be turned in today.  How far
19   away from Mt. Pleasant are you?"
20   Therence:  "About 10 minutes."
21   Zach:  "That's awesome.  Finished my project."
22   I could finish a few more texts, but it's just the
23   logistics of Mr. Jamison getting to what he believed to be
24   Zach's house at 1139 Bonnie Lane.
25   Mr. Jamison arrived at the residence on November 6th

1    of 2020.  He knocked on the front door and was greeted by law

2    enforcement.  They interviewed him.  They advised him of his

3    Miranda rights, and he agreed to speak with them.  In the

4    interview he explained to law enforcement he had gone to

5    prison when he was 19 years old -- I believe that's in the

6    1980s -- for nine months for molesting a family member, and

7    said that if they were to obtain a search warrant for his

8    phone, they would find child pornography.  They did, in fact,

9    obtain a search warrant for his phone, and they found a number

10    of images that were age questionable, but found two images

11    that were the clearly and definitively child pornography, both

12    of minor females between the ages of nine and 11, performing

13    oral sex on an adult male.

14            THE COURT:  Okay.  Mr. Jamison, do you agree with the

15    prosecutor's summary of what you did?

16            THE DEFENDANT:  Yes, ma'am.

17            THE COURT:  Do you have any questions for her before

18    we go on?

19            THE DEFENDANT:  No, ma'am.

20            THE COURT:  Do you have any questions of her before

21    we go on?

22            MS. PENN:  Your Honor, Mr. Jamison let me know that

23    he does not remember the child pornography on his phone.  I

24    mean, it's been a couple of years at this point.  He's also

25    not pleading to that count.  But he would like to preserve

1    that just in case we have to object to it later in the

2    presentence report.

3          THE COURT:  How does that affect your view of the

4    record, Madam U.S. Attorney?

5          MS. ORVILLE:  Your Honor, I believe that since he's

6    pleading to Count 1 and he agrees with the facts that would

7    support that count and the evidence for that count, I believe

8    that should still be fine.

9          THE COURT:  Okay.  All right.  Did you understand all

10    my questions?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Do you have any questions for me before

13    we go on?

14          THE DEFENDANT:  No, ma'am.

15          THE COURT:  How do you wish to plead?

16          THE DEFENDANT:  I'm guilty, your Honor.

17          THE COURT:  And are you guilty?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Okay.  It's the finding of the Court in

20    the case of the United States vs. Therence Jamison, that Mr.

21    Jamison is fully competent and capable of entering an informed

22    plea, and his plea is a knowing and voluntary plea, supported

23    by an independent basis in fact and containing each of the

24    essential elements of the offense.  So, this plea is accepted,

25    and he's now adjudged guilty of that offense.

1          Looks like he's detained; is that correct?

2          MS. PENN:  That's correct, your Honor.

3          THE COURT:  So, a written presentence report will be

4     prepared, and you're going to be asked to give information to

5     probation for that report.  But your lawyer can be present

6     with you during any questioning by U.S. Probation.  Do you

7     understand?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And you and your lawyer will be able to

10    read that report and file any objections to the report prior

11    to sentencing, and then you'll be able to speak on your own

12    behalf.  Do you understand?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  So, you're referred on now to U.S.

15    Probation for preparation of that report.  Thank you.

16         THE DEFENDANT:  All right.  Thank you.

17         MS. PENN:  Thank you, your Honor.

18                    *  *  *  *  *  *

19    I certify that the foregoing is a correct transcript from

20    the record of proceedings in the above-entitled matter.

21     s/Lisa D. Smith,                    11/6/2022

22    _____     _____
      Lisa D. Smith, RPR, CRR                 Date

23

24

25